# UNITED STATES DISTRICT COURT
## District of Kansas
### (Wichita Docket)

**UNITED STATES OF AMERICA,**

                              **Plaintiff,**          **FILED UNDER SEAL**

              **v.**                                  **CASE NO.**  22-CR-10061-001-JWB

**TIMOTHY DALE WARREN,**

                              **Defendant.**

---

# SEALED INDICTMENT

---

**THE GRAND JURY CHARGES**:

## INTRODUCTION

At all times material to this indictment:

## THE DEFENDANT AND RELEVANT ENTITIES

1.      TIMOTHY DALE WARREN is a resident of Haysville, Kansas.  He is a chiropractor who has owned and operated multiple businesses in Wichita, Kansas.

2.      Chiropractic Care Center ("CCC") was a sole proprietorship chiropractic clinic wholly owned by WARREN which opened in or about 1994 or 1995.  Since in or

about 1998, CCC used addresses of 1401, 1409, and 1415 West 31st Street South, Wichita, Kansas.

3.      In or about October 2016, WARREN converted CCC into Titan Medical Center LLC ("TMC"), which is a limited liability company organized in Kansas on or about September 15, 2016.  TMC is a one-member LLC wholly owned by WARREN and is WARREN's current chiropractic clinic.  TMC has used addresses of 1401 and 1415 West 31st Street South, Wichita, Kansas.

4.      The Kansas Department of Labor ("KDOL"), based in Topeka, Kansas requires that LLCs with at least one employee who earns $1,500 or more in wages in a 20-week calendar year must register the business with KDOL.  Failure to register can result in audit, civil penalties, or referral to the Kansas Department of Revenue.  As of at least July 6, 2022, TMC had not registered with KDOL.  CCC, however, was registered with KDOL and had submitted Quarterly Wage Reports ("QWRs") from at least as early as the 1st quarter of 2019 through at least the 4th quarter of 2020.  Those QWRs identified CCC's employees by name and total wages earned.

5.      Interviews of current and former employees of these entities, to include T.R., G.R., M.R., E.H., J.G., K.B., K.D., S.D., and M.B., identified CCC and TMC as being the same business.

## THE SMALL BUSINESS ADMINISTRATION

6.      The United States Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses.  The mission of the SBA is to maintain and strengthen the nation's

economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

7.      As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders.  These loans have government-backed guarantees.

## THE PAYCHECK PROTECTION PROGRAM

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

9.      One source of relief that the CARES Act provided was the authorization of billions of dollars in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, utilities, and other eligible business expenses through a program referred to as the Paycheck Protection Program ("PPP").

10.     The PPP allowed qualifying small businesses and other organizations to receive PPP loans.  Businesses were required to use PPP loan proceeds on payroll costs, interest on mortgages, rent, utilities, and other eligible business expenses.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

11.     The amount of a PPP loan that a small business was entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll expenses.

12.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application (SBA Form 2483, "PPP Borrower Application"), which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  The PPP loan application also specified the maximum percentage of loan proceeds that could be used for eligible non-payroll costs.

13.     In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

14.     The SBA oversaw the PPP.  However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

15.     After the small business expended loan proceeds within a designated period of time, in order to obtain full forgiveness of loan principal and interest the small business (through its authorized representative) had to submit a PPP loan forgiveness application (SBA Form 3508S, "PPP Loan Forgiveness Application") to the same lender which processed and disbursed the PPP loan proceeds.  The loan forgiveness application required the authorized representative to make certain affirmative certifications to be eligible for full loan forgiveness.

16.     After the authorized representative of the business submitted the PPP loan forgiveness application and it was accepted by the lender and SBA, the lender notified the authorized representative of the business that the PPP loan had been fully forgiven by the SBA.

## RELEVANT FINANCIAL INSTITUTIONS

17.     Bank 1 is a Federal Deposit Insurance Corporation ("FDIC")-insured bank headquartered in Hutchinson, Kansas.  Bank 1 was an approved SBA lender and participated as a PPP lender to small businesses.

18.     Bank 2 is an FDIC-insured bank headquartered in Wichita, Kansas.  Bank 2 was an approved SBA lender and participated as a PPP lender to small businesses.

19.     Bank 3 is an FDIC-insured bank headquartered in Wichita, Kansas.

20.     Defendant WARREN fraudulently obtained 1st draw and 2nd draw PPP loans for TMC from Bank 2.  Defendant WARREN went to a different financial institution, Bank 1, and fraudulently obtained 1st draw and 2nd draw PPP loans for CCC.  Defendant

WARREN used Bank 3 to disguise and conceal proceeds of the 1st and 2nd draw PPP loans for CCC.

## FALSE REPRESENTATIONS

21.     On PPP loan applications to Bank 1 and Bank 2 the defendant made false and fraudulent representations and promises to the financial institutions, to wit: misrepresented CCC and TMC as separate functional businesses; represented the loan proceeds would be used on authorized expenditures in accordance with PPP rules; falsely certified that 100% of the proceeds were to be used on payroll costs; submitted false monthly payroll records; submitted false IRS tax forms; submitted false Profit and Loss statements; certified he did not own or have common management of other businesses; certified he (defendant) had not and would not receive another PPP loan; and certified not more than 25% of loan proceeds would be used for (otherwise authorized) non-payroll costs, or not more than 40% for second draw loans.

## COUNTS 1 – 4

## BANK FRAUD
## [18 U.S.C. § 1344]

22.     Paragraphs 1 through 21 are incorporated by reference.

23.     On or about the dates alleged herein, in the District of Kansas and elsewhere, the defendant,

## TIMOTHY DALE WARREN,

did knowingly execute and attempt to execute a scheme and artifice to obtain any moneys, funds, credits, assets, securities, and other property owned by, or under the

custody or control of Bank 1 and Bank 2, by means of false and fraudulent pretenses,

representations and promises as represented herein.

| Count | Date | PPP Loan | Amount |
|---|---|---|---|
| 1 | 5/11/2020 | WARREN submitted a 1st draw PPP loan application for TMC on SBA Form 2483 to Bank 2 and was subsequently awarded the loan. | $36,205.60 |
| 2 | 7/30/2020 | WARREN submitted a 1st draw PPP loan application for CCC on SBA Form 2483 to Bank 1 and was subsequently awarded the loan. | $35,500.00 |
| 3 | 2/2/2021 | WARREN submitted a 2nd draw PPP loan application for CCC on SBA Form 2483 to Bank 1 and was subsequently awarded the loan. | $35,577.30 |
| 4 | 4/26/2021 | WARREN submitted a 2nd draw PPP loan application for TMC on SBA Form 2483 to Bank 2 and was subsequently awarded the loan. | $38,594.80 |

In violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNTS 5 – 6

## MONEY LAUNDERING
### [18 U.S.C. § 1957]

24.     Paragraphs 1 through 23 are incorporated by reference.

25.     On or about the dates alleged herein, in the District of Kansas and

elsewhere, the defendant,

## TIMOTHY DALE WARREN,

knowingly engaged and attempted to engage in monetary transactions by, through and to

financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, that is deposits, withdrawals, transfers and exchanges described below of United States currency, funds and monetary instruments in the amounts specified below, such property having been derived from a specified unlawful activity, that is, Bank Fraud, in violation of 18 USC §1344.

| Count | Date | Monetary Transaction | Amount |
|-------|------|---------------------|--------|
| 5 | 8/3/2020 | WARREN negotiated and signed a cashier's check resulting from 1st draw PPP loan proceeds from Bank 1 and deposited the funds into his CCC business bank account at Bank 3 | $35,500.00 |
| 6 | 2/8/2021 | WARREN negotiated and signed a cashier's check resulting from 2nd draw PPP loan proceeds from Bank 1 and deposited the funds into his CCC business bank account at Bank 3 | $35,577.30 |

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 7 – 10

### FALSE STATEMENTS
### [18 U.S.C. § 1001]

26.    Paragraphs 1 through 25 are incorporated by reference.

27.    On or about the dates alleged herein, in the District of Kansas and elsewhere, the defendant,

### TIMOTHY DALE WARREN,

knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the

Government of the United States, namely the SBA, by affirmatively certifying on SBA

Forms 3508S, "PPP Loan Forgiveness Application," that the full proceeds obtained from

each PPP loan he received were expended on payroll costs, and that he complied with all

PPP requirements.  The statements and representations were materially false because, as

defendant WARREN knew at the time he submitted the SBA Forms 3508S, that he did

not expend all loan proceeds on payroll costs and he did not comply with all PPP

requirements.

| Count | Date | PPP Loan | Forgiven Amount |
|---|---|---|---|
| 7 | 4/26/2021 | WARREN submitted a 1st draw PPP loan forgiveness application for TMC on SBA Form 3508S to Bank 2 and the loan was subsequently fully forgiven. | $36,205.60 |
| 8 | 4/14/2021 | WARREN submitted a 1st draw PPP loan forgiveness application for CCC on SBA Form 3508S to Bank 1 and the loan was subsequently fully forgiven. | $35,500.00 |
| 9 | 8/30/2021 | WARREN submitted a 2nd draw PPP loan forgiveness application for CCC on SBA Form 3508S to Bank 1 and the loan was subsequently fully forgiven. | $35,577.30 |
| 10 | 11/1/2021 | WARREN submitted a 2nd draw PPP loan forgiveness application for TMC on SBA Form 3508S to Bank 2 and the loan was subsequently fully forgiven | $38,594.80 |

In violation of Title 18, United States Code, Sections 1001 and 2.

## FORFEITURE NOTICE

1.      The allegations contained in Counts 1 – 6 of this Indictment are hereby

reablleged and incorporated by reference for the purpose of alleging forfeiture pursuant to

Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United

States Code, Section 2461(c).

2.      Upon conviction of one or more of the offenses set forth in Counts 1 – 4 of

this Indictment, the defendant shall forfeit to the United States of America, pursuant to

Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code,

Section 2461(c), any property, real or personal, which constitutes or is derived from

proceeds traceable to the offenses.  The property to be forfeited includes, but is not

limited to, the following:

> A.  A forfeiture money judgment against the defendant in an amount equal
> to the amount of gross proceeds obtained or derived by him from the
> commission of Counts 1 – 4.

3.      Upon conviction of one or more of the offenses set forth in Counts 5 - 6,

the defendant shall forfeit to the United States of America, pursuant to Title 18, United

States Code, Section 982(a)(1), any property, real or personal, involved in such offenses,

or any property traceable to such property, including but not limited to, the following:

> A.  A forfeiture money judgment against the defendant in an amount equal
> to the value of the property involved in the commission of Counts 5 and 6.

4.      If any of the property described above, as a result of any act or omission

of the defendant:

> A.      cannot be located upon the exercise of due diligence;

B.    has been transferred or sold to, or deposited with, a third party;

C.    has been placed beyond the jurisdiction of the court;

D.    has been substantially diminished in value; or

E.    has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p).

A TRUE BILL.


August 9, 2022            s/Foreperson
DATE                  FOREPERSON OF THE GRAND JURY


DUSTON J. SLINKARD
UNITED STATES ATTORNEY

By: /s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas  67202
Ph: (316) 269-6481
Fax: (316) 269-6484
Email: aaron.smith3@usdoj.gov
Ks. S. Ct. No. 20447


IT IS REQUESTED THAT THE TRIAL BE HELD IN WICHITA, KANSAS

<u>**PENALTIES**</u>

## Counts 1 – 4 Bank Fraud

- Punishable by a term of imprisonment of not more than twenty (20) years.  18 U.S.C. § 1341.
- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).
- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571(d).
- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).
- Forfeiture.

## Counts 5 – 6 Money Laundering

- Punishable by a term of imprisonment of not more than ten (10) years.  18 U.S.C. § 1957.
- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).
- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the amount of criminally derived property involved in the transaction.  18 U.S.C. § 1957(b)(2).
- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

## Counts 7 – 10 False Statements

- Punishable by a term of imprisonment of not more than five (5) years.  18 U.S.C. § 1001.
- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).
- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571(d).
- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).